O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DEL ROSARIO E.,<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREW SAUL, Commissioner of Social Security,[1]<br><br>        Defendant. | Case No. 5:19-cv-00982-KES<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## BACKGROUND

In December 2014, Plaintiff Maria Del Rosario E. ("Plaintiff") applied for Title II disability benefits alleging an onset date of March 13, 2013 (age 42), the date on which she fell at work and broke her left kneecap.[2] Administrative Record ("AR") 56, 59, 224. On May 7, 2018, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared

---

[1] Andrew Saul is substituted for his predecessor, Nancy Berryhill. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] While Plaintiff testified that she has not worked since March 2013 (AR 58), in August 2014, she told Kaiser that "she has a lot of anxiety recently at work." AR 423, 683.

1

and testified along with a vocational expert ("VE"). AR 45-85. On June 20, 2018, the ALJ issued an unfavorable decision. AR 26-38.

The ALJ found that Plaintiff's last date insured was March 31, 2015. AR 29. The ALJ found that Plaintiff suffered from severe impairments affecting her knees and lower back but had no severe mental impairments.[3] AR 29-30. Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of sedentary work. AR 31. Based on this RFC and the VE's testimony, the ALJ found that Plaintiff could work as a bench assembler, table worker, or surveillance monitor (collectively, the "Alternative Jobs"). AR 38. The ALJ concluded that Plaintiff was not disabled. Id.

## II.
## ISSUES PRESENTED

Issue One: Whether the ALJ erred in finding that Plaintiff did not meet or equal Listing 1.02(A). (Dkt. 41, Joint Stipulation ["JS"] at 4-6, 8-17.)[4]

Issue Two: Whether the ALJ erred in finding that Plaintiff could perform the Alternative Jobs, because the ALJ failed to credit Plaintiff's testimony and overstated her RFC. (Id. at 4, 17-18, 21.)

---

[3] Plaintiff had alleged that she only went outside for doctors' appointments due to her anxiety (AR 274) and that she could not work due to anxiety and depression (AR 252). She also testified that she was "very forgetful" and had "brain fogs." AR 76. A psychiatric consultative examiner concluded in 2015 that she had no difficulty in concentration, persistence and pace and only mild difficulties focusing and maintaining attention, and that she was intellectually and psychologically capable of performing activities of daily living. AR 496. Plaintiff does not challenge the ALJ's mental impairment findings on appeal.

[4] Plaintiff's counsel filed the "final" version of the Joint Stipulation, which included Plaintiff's reply, on February 3, 2021. (Dkt. 41.) The Court has considered these arguments herein.

## III.
## DISCUSSION

A. **ISSUE ONE: Listing 1.02(A).**

    **1. The Requirements of Listing 1.02(A).**

Plaintiff bears the burden to prove that she had an impairment that met or equaled one of the Commissioner's listed impairments, i.e., a condition so severe that it is per se disabling at Step Three of the sequential analysis. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Part 404, Subpt. P, App. 1.

Listing 1.02(A) is one of the listings describing impairments of the musculoskeletal system. To meet Listing 1.02(A), Plaintiff must satisfy all of the following four conditions:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by **[1]** gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis[5]), instability and **[2]** chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and **[3]** findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s). With:
>
>     A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in **[4]** inability to ambulate effectively, as defined in 1.00B2b. . . .

20 C.F.R. Part 404, Subpt. P, App. 1, Listing 1.02(A).

---

[5] Based on the Court's research, "subluxation" refers to an incomplete or partial dislocation of a joint or organ; "contracture" refers to a shortening or hardening of a muscle or joint; "fibrous ankylosis" is a fibrous connective tissue process which results in decreased range of motion, with symptoms including osseous tissue fusing two bones together, reducing mobility; and "joint instability" happens when tissues - such as muscles, ligaments, and bones - weaken.

The "inability to ambulate effectively" is defined in the cited regulation as follows:

> (1) Definition.  Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00(J)) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities….
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P. App. 1, Listing 1.00(B)(2)(b)(1)-(2).  Thus, the regulations provide a "general definition" in Listing 1.00(B)(2)(b)(1) followed in Listing 1.00(B)(2)(b)(2) by several examples of situations that may satisfy that definition.

### 2. The ALJ's Findings.

The ALJ considered whether Plaintiff's medically determinable physical impairments met or equaled several Listings including those under 1.02. AR 31. The ALJ concluded that they did not, citing reasons including "there is no objective medical evidence to support the claimant's inability to ambulate effectively …." Id.

The ALJ discussed a January 2017 Qualified Medical Evaluation in Plaintiff's workers' compensation case that resulted in an opinion by Lee B. Silver, M.D., that Plaintiff could return to work if restricted against lifting more than 10 pounds, continuous standing/walking, and repetitive postural activities. AR 34 (citing AR 940). The ALJ gave "significant weight" to Dr. Silver's opinion. AR 35. The ALJ "substantial weight" to a "consistent" November 2017 opinion from Stanley G. Katz, M.D., who opined that Plaintiff could do sedentary work with a sit/stand option and a cane. AR 35 (citing AR 954). The ALJ also discussed opinions by consultative examiner Anh Tat Hoang, M.D., and two state agency medical consultants, each of whom assessed Plaintiff with fewer restrictions than those later assessed by the ALJ. AR 35, citing AR 102 (Dr. Chu's RFC for light work), AR 117 (Dr. Singh's RFC for light work with a sit/stand option), AR 501-04 (Dr. Hoang's report).

### 3. Analysis of Claimed Error.

Plaintiff's argument, while unclear, appears to be that (1) she could not ambulate effectively because she used a cane, and (2) the ALJ should not have relied on Dr. Hoang's opinion that Plaintiff could ambulate without a cane, because Dr. Hoang "performed no x-rays and reviewed no records" and offered opinions "inconsistent with all of Plaintiff's treating physicians." (JS at 6, 11.)

This argument fails for multiple reasons, the most salient being that Plaintiff has not shown that she was incapable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living, i.e., the

5

regulatory definition of effective ambulation. In May 2015, Plaintiff admitted that she could walk a limited distance, and the physician who examined her recommended only ointments and referral to a knee specialist. AR 1014, 1017. In July 2015, she reported that she was not using her cane as much as she used to and was moving around better. AR 766. On examination the same year, she had a normal gait without the use of ambulatory devices, with Dr Hoang opining that her assistive device was not medically necessary. AR 504. As discussed above, several doctors opined that she was <u>less</u> limited than the RFC assessed by the ALJ. Indeed, in 2014, she admitted to exercising four times a week for over thirty minutes at a time. AR 653; <u>see also</u> AR 652 ("The patient exercises 420 minutes per week at a moderate to strenuous level."). Despite her suggestion that they exist, Plaintiff cites to no medical opinions that she could not ambulate effectively after recovering from surgery for her knee injury. Furthermore, even if the evidence supported Plaintiff's assertion that she needs a cane to ambulate effectively, that alone (given the rest of the record) would not have risen to the level of Listing 1.02. <u>See</u> <u>Woodson v. Colvin</u>, No. 15-03993, 2016 WL 1170862, at *7 (C.D. Cal. Mar. 23, 2016) (affirming ALJ's finding that plaintiff did not meet Listing 1.02 despite her use of a cane, given the other evidence in the record that she was functional and able to ambulate).[6] She therefore has not met her burden of proof that she meets Listing 1.02.

B. **ISSUE TWO: Plaintiff's Subjective Symptom Testimony.**

Plaintiff contends that the ALJ's RFC determination should have accounted

---

[6] To the extent Plaintiff argues the ALJ was required to find she met Listing 1.02 based on the RFC determination that she could not walk on uneven terrain, courts have routinely rejected such arguments. <u>See, e.g.</u>, <u>Moreno v. Astrue</u>, 444 Fed. App'x 163, 164 (9th Cir. 2011); <u>Hernandez v. Colvin</u>, 2013 WL 1401368, at *4 (C.D. Cal. Apr. 4, 2013); <u>Delavara v. Astrue</u>, 2013 WL 645626, at *5 (C.D. Cal. Feb. 20, 2013).

for Plaintiff's testimony that she needed a cane to ambulate.[7] (JS at 17.) She argues that the ALJ failed to give sufficient reasons for rejecting Plaintiff's testimony in this regard. (Id. at 18.)

### 1. Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. (citation omitted). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

### 2. Summary of Plaintiff's Testimony.

In January 2015, Plaintiff completed an Adult Function Report. AR 271. She reported that she was "unable to stand or walk for any significant amount of time" and needed to elevate her left leg when sitting. Id.; AR 276 ("can only walk 5 min." without legs shaking). She used a cane and brace daily. AR 277. She also daily spent 6-10 minutes preparing meals like oatmeal or sandwiches. AR 273.

---

[7] Plaintiff also implies that she testified that she would be absent from work or off-task so frequently as to preclude employment. (See JS at 17.) Although the ALJ and Plaintiff's attorney asked the VE about off-task and absence limitations, see AR 84, the ALJ made no off-task finding. To the extent Plaintiff argues that her pain makes it impossible to focus on or attend work, the discussion herein sets out the ALJ's clear and convincing reasons for discounting her testimony.

7

She would spend 15 minutes per day doing household chores like wiping the counters, sweeping, or washing dishes. Id. She could drive to "familiar places" and shop in stores with her husband. AR 274.

In May 2018, Plaintiff testified that ever since her March 2013 fall at work, she had been unable to walk without knee braces and an assistive device such as a cane. AR 71-72. She needed the knee braces for stability; her knee could "go either forward or backward" and she had "no control over that." AR 78. She sprained both ankles when she fell in March 2013, and they were still sore in 2018. AR 73, 78. Her hips were also sore, and her left hip wanted "to pop out of [its] socket." AR 77. Because of hip pain, she could not "walk straight" even on good days, and on bad days she could not move. AR 78.

She could only stand or walk for 10-15 minutes at a time, and she could only do this 2-3 times per day on a good day. AR 68-69. On bad days, she stayed in bed. AR 68. She could only sit for 10-15 minutes before experiencing numbness and her tailbone burning like fire. AR 69. She testified that she could only use one arm for lifting, since she always needed to hold on to something to avoid falling. AR 70-71. She estimated that she could lift at most five pounds. Id.

### 3. The ALJ's Evaluation of Plaintiff's Testimony.

After reciting the two-step process, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 32. The ALJ then explained that Plaintiff's subjective symptom testimony was "not supported by the objective medical evidence." Id. Among other evidence, the ALJ cited Dr. Hoang's physical examination which observed that Plaintiff had a full range of motion in her left knee, a normal gait without using an assistive device, the ability to heel-to-toe walk, a normal examination of her lower extremities, and negative straight-leg raising tests. AR 34 (citing AR 502-03); see also AR 684 ("gait

normal" in August 2014).

The ALJ also noted that Plaintiff had reported her symptoms inconsistently. While Plaintiff testified in May 2018 that she needed a cane to walk, in May 2015 at an initial consultation with Ultimate Sports and Orthopaedics, she reported that she experienced knee pain when "squatting" or climbing stairs, but she was "able to walk a limited distance." AR 34 (citing AR 1014). In July 2015, she told treating physician Jack Akmakjian, M.D., that she was "not using her cane as much" and could "move around better now," with medication decreasing her pain "50%."[8] AR 33 (citing AR 845).

Third, the ALJ discussed physical examinations that found no evidence of muscle atrophy. AR 35 (citing AR 502 [May 2015 observations by Dr. Hoang of no atrophy] and AR 931 [January 2017 measurements by Dr. Silver]). The ALJ concluded that "pain has not altered her use of [her lower extremity] muscles to an extent that has resulted in atrophy," which was inconsistent with Plaintiff's testimony. Id.

As a fourth reason for discounting her testimony, the ALJ noted that Plaintiff "engaged in a somewhat normal level of daily activity" which included "attending a diabetes class, exercising four days per week, making simple meals, doing dishes, driving, going out alone, grocery shopping, paying bills, and spending time with friends." AR 35; see AR 271 (Adult Function Report); AR 587 (discussing 4-part diabetes class); AR 438, 593 (in October 2013, Plaintiff told Kaiser that she "exercises 20 minutes 5 days per week at a moderate or strenuous level"); AR 429 (in April 2014, Plaintiff told Kaiser that she "exercises 1050 minutes per week at a moderate to strenuous level")[9]; AR 653 (in April 2014, Plaintiff told Kaiser that

---

[8] In November 2013, Plaintiff reported that her only medication was Gemfibrozil (a cholesterol-lowering medication) and she did not want to take "too many meds." AR 437.

[9] Even if the medical professional meant to write "150 minutes" or "10-15"

9

she exercises "4 or more days per week" typically for "over 30 minutes"). The ALJ concluded that Plaintiff's ability to "participate in such activities diminish[ed] the persuasiveness" of her allegations of extreme functional limitations. AR 35.

### 4. The ALJ Gave Clear and Convincing Reasons Supported by Substantial Evidence for Discounting Plaintiff's Testimony.

First, the ALJ was permitted to consider if the extreme physical limitations claimed by Plaintiff many years after her fall were consistent with the objective medical evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." (citation omitted)). The ALJ's finding of inconsistency is supported by substantial evidence, as cited above.

Next, the ALJ properly considered Plaintiff's inconsistent symptom reporting. See Social Security Ruling ("SSR") 16-3p, 2016 SSR LEXIS 4. The records cited by the ALJ show that what Plaintiff told medical sources about her functional limitations was less extreme than her hearing testimony. The Court further notes that when Plaintiff went to the emergency room in March 2016 complaining of abdominal pain, she was "negative" for back pain, displaying a "normal range of motion" and "normal muscle tone." AR 1102-03. ER staff observed that she was "ambulatory with no restrictions." AR 1111; see also AR 1185 (noting Plaintiff "ambulated > 300 feet" and "able to perform ADLs independently" without mentioning use of a cane). Plaintiff reported being able to walk no more than 5 minutes without her legs shaking and could not be on her feet longer than 10-15 minutes and needed a cane, yet she told Kaiser that she exercised

---

minutes, either way this would exceed what Plaintiff stated she was capable of doing on a regular basis.

for 20 or 30 minutes at a time regularly at a moderate to strenuous level. Compare AR 68-72, 276 and AR 429, 593, 653. Thus, the ALJ's finding of inconsistency between Plaintiff's testimony and reported activities is supported by substantial evidence, and it provides another clear and convincing reason to discount Plaintiff's testimony.

Under some circumstances, the Ninth Circuit permits ALJs to consider whether the lack of atrophy is consistent with a claimant's subjective symptom testimony. See Osenbrock v. Apfel, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (upholding an ALJ's rejection of symptom testimony where the ALJ made specific findings including a lack of atrophy); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (upholding adverse credibility determination where claimant's testimony that pain "required her to lie in a fetal position all day" was inconsistent with not "exhibit[ing] muscular atrophy").[10] Plaintiff testified that even on good days, she spent at most 45 minutes per day on her feet. AR 68-69. The ALJ could properly find that such extreme inactivity was inconsistent with a lack of observable atrophy. But even if the ALJ erred by considering the lack of atrophy, any error was harmless, because the ALJ cited other reasons sufficient to discount Plaintiff's testimony. See Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991) (holding that a decision of the ALJ will not be reversed for errors that are harmless).

Given the clear and convincing nature of the ALJ's reasons for discounting Plaintiff's testimony, substantial evidence supported the absence of a cane requirement, given the other limitations set out in the RFC such as no walking on uneven terrain and limiting her to sedentary work. Furthermore, the VE testified

---

[10] But see Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 665 (9th Cir. 2010) (unpublished) (ALJ's reliance on lack of muscle atrophy inappropriate where "no medical evidence suggest[ed] that high inactivity levels necessarily lead to muscle atrophy").

that including a cane or assistive device for ambulation would reduce all three positions in the labor market by 50 percent. See AR 83-84. Based on the VE's testimony, such a reduction would leave 121,000 bench assembler, 204,500 table worker, and 210,000 surveillance monitor positions in the national economy. See AR 38. These figures would render any error harmless. See Jones v. Berryhill, No. 17-00376, 2018 WL 4292245, at *5 (E.D. Cal. Sept. 7, 2018) (finding any error in not including certain RFC limitations harmless, because VE testified that plaintiff could perform other jobs even with these limitations); Gutierrez v. Comm'r, Soc. Sec., 740 F.3d 519, 528-29 (9th Cir. 2014) (holding that 25,000 national jobs was a significant number); Thomas v. Comm'r, 480 Fed. App'x 462, 464 (9th Cir. 2012) (affirming ALJ even though claimant could not perform two identified jobs because she could perform the remaining job of housekeeper, which existed in significant numbers in the national economy).

## IV.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner shall be AFFIRMED. Judgment shall be entered consistent with this order.

DATED: February 18, 2021

_____
KAREN E. SCOTT
United States Magistrate Judge